### AFFIDAVIT IN SUPPORT OF AN APPLICATION
### FOR A CRIMINAL COMPLAINT

I, Jason D. Costello, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since July 2004. I am assigned to the Boston Division of the FBI and serve as the Airport Liaison Agent Coordinator at Boston Logan International Airport (BOS) where I investigate violations of federal law in the airport environment and onboard aircraft. In my capacity as an Airport Liaison Agent, I work with other law enforcement agencies at BOS, including the Massachusetts State Police (MSP). I also have received training in the investigation of sexual assault and related crimes.

2. I make this affidavit in support of a criminal complaint charging Jairaj Singh DHILLON ("DHILLON"), YOB 1979, with violating Title 49, United States Code, Section 45606(1) (application of certain criminal laws to acts on aircraft) and Title 18 United States Code, Section 2244(a)(2) (abusive sexual contact).

3. I am aware that, under Title 49, United States Code, Section 46501(2)(A), Special Aircraft Jurisdiction of the United States applies to any civil aircraft of the United States while the aircraft is in flight. An "aircraft in flight" is defined in Section 46501(1)(A) of that title as an aircraft from the moment all external doors are closed following boarding through the moment when one external door is opened to allow passengers to leave the aircraft.

4. Title 49, United States Code, Section 46506(1) states, in pertinent part, "[a]n individual on an aircraft in the special aircraft jurisdiction of the United States who commits an act that … if committed in the special maritime and territorial jurisdiction of the United States (as defined in section 7 of title 18) would violate … chapter 109A of title 18, shall be fined under title

18, imprisoned under that section or chapter, or both."

5. I am also aware that Title 18, United States Code, Chapter 109A, Section 2244(a)(2), provides that whoever "knowingly engages in or causes sexual contact with or by another person, if so to do would violate … section 2242 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than three years, or both." Title 18, United States Code, Section 2242(3), prohibits knowingly engaging in a sexual act with another person without that other person's consent.

## PROBABLE CAUSE

6. On or about May 31, 2022,[1] while onboard JetBlue Flight 988 enroute from Los Angeles, California, to Boston, Massachusetts, DHILLON engaged in unwanted sexual contact of two adult females ("Victim 1" and "Victim 2").[2] DHILLON was seated in seat 22D (aisle). Victim 1 was seated next to DHILLON in seat 22E (middle). Victim 1's infant child was in a car seat in 22F (window). Victim 1's husband ("Witness 1") and pre-school aged child were seated in seats 22B (middle) and 22A (window), respectively. Victim 2 was seated across the aisle from DHILLON in seat 22C (aisle).

7. Flight 988 departed Los Angeles at approximately 9:00 p.m. PDT. Approximately 30 minutes into the flight, the JetBlue cabin and cockpit crew were alerted to unwanted sexual contact by DHILLON involving Victim 1 and Victim 2. JetBlue crew thereafter reseated DHILLON from seat 22D to seat 4A, with 4B being empty, in order to deescalate the situation and

---

[1] As described below, the offense conduct occurred at approximately 9:30 p.m. PDT on May 30, 2022, which is approximately 12:30 a.m. EDT on May 31, 2022.

[2] The identities of Victim 1, Victim 2, and Witness 1 are known to the government and anonymized here to protect their identities.

continue the flight. The pilot in command then reported the incident to JetBlue operations and security, who in turn notified law enforcement in Boston to meet the flight upon its arrival.

8. I, along with MSP Detectives and Troopers, met JetBlue Flight 988 upon its arrival to Boston at approximately 5:30 a.m. EDT. Uniformed MSP Troopers located DHILLON in seat 4A and escorted him into the gate area where he was detained, while MSP Detectives and I interviewed Victim 1, Victim 2, and Witness 1.

9. Victim 1 advised that, about 30 minutes into the flight, the male passenger seated to her left in 22D (later identified as DHILLON), began caressing her left upper thigh, using the back and the palm of his right hand. Before Victim 1 was able to move out of the way, DHILLON reached deeper into Victim 1's upper thigh area and then between Victim 1's legs into her groin area. This happened as Victim 1 was leaning over taking care of her infant child who was in a car seat to her right in the window seat. Victim 1 hit DHILLON's hand away, turned sideways in her seat, pressed the flight attendant call-button, and yelled for her husband (Witness 1). Victim 1 called out for her husband several times and stated out loud, "this man just groped me," while pointing to DHILLON. Witness 1 stood up and stared at DHILLON for few a moments until a flight attendant arrived. Victim 1 did not see DHILLON consume anything during the flight.

10. Witness 1 stated that he heard his wife (Victim 1) call his name approximately 30 minutes into the flight and say that she was just groped by the male passenger seated next to her (later identified as DHILLON). The female passenger seated next to Witness 1 (Victim 2) had to get out of her seat in order for Witness 1 to get out of his seat. While waiting for a flight attendant to arrive, Witness 1 stood and watched DHILLON, who "seemed off." While waiting for the flight attendant, Witness 1 observed DHILLON touch Victim 2.

11. Victim 2 advised that she was seated in 22C, which was an aisle seat. Victim 2 was

aware that the man seated next to her in 22B (Witness 1) and his young child in 22A were traveling with the man's wife (Victim 1) and their infant child in 22E and 22F, respectively. Another man (later identified as DHILLON), was seated across the aisle from Victim 2 in 22D. Not long into the flight, Victim 2 became aware that Victim 1 and Witness 1 were trying to communicate. As Victim 2 had noise cancelling earphones on, she did not know what they were saying. Witness 1 indicated to Victim 2 that he wanted to get out of his seat to get a flight attendant. Victim 2 got out of her seat and stood in the aisle facing the rear of the aircraft, next to DHILLON who was still seated. DHILLON then reached out with both hands and simultaneously grabbed Victim 2's groin and buttocks. Victim 2 immediately hit DHILLON's hands away. Victim 2 then heard Victim 1 scream that he (DHILLON) had just done that to her (Victim 1) as well. Victim 2 felt that DHILLON was "not all there." JetBlue crew members moved DHILLON to another seat for the duration of the flight.

12.     JetBlue customer service personnel provided DHILLON's ticket information that contained his name, date of birth (XX/XX/1979), a telephone number ending in 5672, and an itinerary showing that he was scheduled to connect to another JetBlue flight from Boston, Massachusetts, to Philadelphia, Pennsylvania. The ticket information indicated that DHILLON was assigned to seat 22D on Flight 988.

13.     DHILLON was brought to the MSP airport barracks for questioning. The interview was recorded. DHILLON was advised of his *Miranda* rights, waived them, and agreed to speak with agents on scene. During the voluntary interview, DHILLON advised that he was a truck driver, and that he was flying to Philadelphia to pick up a tractor trailer and drive it back to California. When asked about what happened on Flight 988, DHILLON advised that he was seated next to a white woman, who was approximately 40 years old. The woman's baby was in a car seat

next to her. DHILLON was aware that the woman's husband and other child were seated on the other side of the aisle in the middle and window seats. Another woman was seated in the aisle seat across from DHILLON. Upon taking their seats, DHILLON had offered to switch seats in order for the family to be seated closer together, but the woman indicated that the car seat was required to be in a window seat. DHILLON recalled the woman leaning over and talking "baby talk" to the infant.

14. DHILLON denied any memory of his alleged unwanted sexual contact of Victim 1, and indicated that he was sleeping. DHILLON advised that about 15 or 20 minutes into the flight he took an Ambien to help him sleep.[3] DHILLON said that any physical contact of Victim 1 would have been accidental. DHILLON also made remarks indicating he was not attracted to Victim 1, suggesting that he would not have desired to touch her because of his lack of attraction. When asked about his unwanted sexual contact of Victim 2, DHILLON likewise denied any memory of this, stating that he was sleeping and that the contact would have been accidental. When asked how such contact could have been accidental, DHILLON stated that the contact described above could happen if attempting to hug someone. When asked, DHILLON did recall flight attendants telling him he needed to move seats, and recalled actually moving seats.

## CONCLUSION

15. Based on all of the foregoing, I submit that there is probable cause to believe that, on or about May 31, 2022, DHILLON, being an individual on an aircraft in the special aircraft jurisdiction of the United States while onboard JetBlue Flight 988 enroute from Los Angeles,

---

[3] DHILLON said that he had an old prescription for the sleep aid from a couple of years ago but he did not have a prescription bottle or additional pills that appeared to be Ambien in his possession.

California, to Boston, Massachusetts, did violate Title 49, United States Code, Section 46506(1), application of certain criminal laws to acts on aircraft, and Title 18 United States Code, Section 2244(a)(2), abusive sexual contact.

_____
Jason D. Costello
Special Agent, FBI

Sworn to before me on this 31st day of May 2022.

_____
Hon. Judith G. Dein
United States Magistrate Judge